**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

DIANE LANG,

     Plaintiff,

v.                                 Civil Action No.: _____

DM MOVER, INC. d/b/a
TRANS UNITED VAN LINES,

     Defendant.

_____/

## COMPLAINT

COMES NOW Plaintiff, DIANE LANG ("Plaintiff"), by and through her undersigned counsel, and files this Complaint against Defendant, DM MOVER, INC. d/b/a TRANS UNITED VAN LINES ("Defendant"), and alleges the following:

### JURISDICTION AND VENUE

1.     This is an action to recover damages under the Carmack Amendment to the ICC Termination Act, previously known as the United States Interstate Commerce Act, 49 U.S.C. § 14706.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the Carmack Amendment claim arises under a federal statute.

2.     Venue in the Northern District of Florida, Gainesville Division, is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  It is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) as the Defendant is an entity with the capacity to sue and be sued and is subject to this Court's personal jurisdiction with respect to this action.

## PARTIES

3.     Plaintiff is an individual who previously resided in Alachua County, Florida, and has since relocated to Elk Grove, California.

4.     Defendant is a Florida for-profit corporation, with a principal place of business (according to the Florida Secretary of State's website, www.sunbiz.org) located at 1790 N.E. 148 Street, North Miami, Florida 33161.  According to its website (transunitedvanlines.com), Defendant offers a "BINDING-NOT-TO-EXCEED the estimate contract that covers all expenses up front.  There are no hidden charges."  Defendant further represents on its website that it "Can move your household to any destination in the continental United States with the dependability you deserve!"

## GENERAL ALLEGATIONS

5.     In or around late January/early February 2018, based in part on representations made within Defendant's website cited above, as well as the

additional representation that Defendant was not a "broker," Plaintiff contacted Defendant to inquire about its services in assisting her with an upcoming move from Gainesville, Florida to Elk Grove, California.

6.     Plaintiff is not an experienced shipper, as she does not regularly contract for the carriage of goods.

7.     After preliminary discussions and negotiations with an agent of Defendant by the name of "Aaron," Plaintiff agreed to pay Defendant no more than $1,541.50 (exclusive of any additional costs for insurance/liability protection), in exchange for Defendant transporting her personal belongings from Gainesville to Elk Grove, pursuant to a "Binding Moving Estimate" sent to her by email on February 24, 2018.  A true, correct, and authentic copy of the "Binding Moving Estimate" is attached hereto as **Exhibit 1.**

8.     Of particular importance, the "Binding Moving Estimate" states that the amount of $1,541.50 was a "BINDING NOT TO EXCEED PRICE" based upon information provided by the Plaintiff, and that delivery would take place on the "West Coast up to 21 Calendar Days."

9.     On the original "Binding Moving Estimate" which is an electronic form, although there appears to be space for the customer to initial varying levels of liability, it is not possible for the customer to add its initials electronically.  In other words, that portion of the form is not "interactive" or modifiable by the user.

This fact is further bolstered by the "Click on Online Electronic Signature to confirm your move online" link which is provided at the bottom of the form.

10.    Also on February 24, 2018, Plaintiff sent Defendant a deposit in the amount of $462.35 (Check #1033).

11.    Based on representations provided by Defendant, Plaintiff proceeded to make plans to fly to California shortly after her belongings were to be picked up and loaded by Defendant.

12.    On March 15, 2018, Plaintiff's personal belongings were packed up and loaded by an agent of Defendant, at which time Plaintiff was provided a document entitled "Household Goods Descriptive Inventory Warehouse Receipt & Storage Contract" which contained the service order number U5113698 (hereafter "Warehouse Receipt"), a true, correct and authentic copy of which is attached hereto as **Exhibit 2.**

13.    The Warehouse Receipt accurately reflects not only all of the personal property received by Defendant, but also the fact that all items were in good condition, as there were not exceptions/remarks indicating any of the property had been damaged or was otherwise not in good condition.

14.    This is the only document received by Plaintiff at the pickup. Plaintiff was not provided a copy of any bill of lading (if one exists) or a shipper's receipt (if one exists).

15.    The total value of the personal property picked up by Defendant is well over $15,000.00.

16.    Before departing with Plaintiff's property, Defendant told Plaintiff that her belongings exceeded the driver's limit (in either weight or size), and as a result, the driver would require Plaintiff to make an additional payment of approximately $3,000.00 in cash before he would depart to California.

17.    Defendant, by and through its driver, as well as his purported supervisor "Jason Mariano," made an additional risk related guarantee to Plaintiff that if she paid the additional cash of approximately $3,000.00, her delivery would be completed within two (2) weeks.

18.    Begrudgingly, and with no other options given that all arrangements for the move had already been made, Plaintiff was forced to give in to Defendant's demands and pay the additional approximate $3,000.00 in cash.

19.    Defendant then advised Plaintiff that the approximate $3,000.00 would be treated as an additional deposit (along with the $462.45 previously paid), and that the total cost of the move was now going to be over $6,000.00, even though the original "binding" estimate was only around $1500!

20.    Defendant then departed with Plaintiff's property.

21.    Four days later, on or about March 19, 2018, Plaintiff contacted Defendant to inquire about the status or progress of the delivery.   During this

phone call with "Jason Mariano" Plaintiff was advised that her belongings had not yet left the state of Florida.  When asked "why not" Mr. Mariano replied that Defendant required more money, this time in the amount of $1,652.25, before it could ship Plaintiff's items to California.  During this conversation, Mr. Mariano repeated the earlier promise and guarantee that if this additional amount was paid, then Defendant would guarantee delivery within two (2) weeks.  Plaintiff was further advised that Defendant would get back to her regarding the exact date of delivery.

22.    Again, left with no other viable options at the time, Plaintiff made another payment to Defendant, this time using Check #1036.

23.    Between March 19, 2018 and May 10, 2018, Plaintiff contacted Defendant no less than nine (9) times attempting to obtain the exact date of delivery.  During her various conversations with purported customer service representatives and managers, Plaintiff was given a variety of excuses for the delay, but was never provided with a delivery date.

24.    Finally, on or about May 10, 2018, Plaintiff was contacted by "Gonzalo" who introduced himself as the driver who would be taking her property to California.  "Gonzalo" provided Plaintiff with his cell phone number and said that he anticipated delivery between May 20-23rd.

25.    On May 24, 2018, Plaintiff contacted "Gonzalo" to inquire about the anticipated delivery date; however, "Gonzalo" advised Plaintiff that while he was on his way to California, he had been unable to retrieve her belongings from a storage facility before he left Florida because the facility refused to release them.

26.    Plaintiff repeatedly contacted Defendant between May 24, 2018 and May 31, 2018 to try to figure out the status of her shipment.  Each time she called, Defendant's agents advised that they would have to get back to her and none could provide a definitive delivery date or even tell her where her property was currently located.

27.    On May 31, 2018, Plaintiff was advised by Defendant that her property was located in Ocala, Florida, at a storage facility, and that Defendant would call her back the next day.

28.    On June 1, 2018, Defendant told Plaintiff the storage facility in Ocala, Florida would not release Plaintiff's belongings to Defendant because only the employee who dropped them off could "sign for them" and this employee had moved to Miami and was no longer with the company.

29.    Between June 1, 2018 and June 16, 2018, Defendant's agents repeatedly advised Plaintiff that the shipment would be taking place soon and that they would call her back to confirm an anticipated delivery date.

30.   As of July 5, 2018, Plaintiff's property had not been delivered to her in California, nor had Defendant been able to give her definitive information regarding where her property was located, or when it might be delivered to her in California.  It was at this point that Plaintiff made a formal demand or notice of claim upon Defendant, seeking either a return of her property (as well as a refund), or that delivery occur within ten (10) days.  A true, correct, and authentic copy of the Notice of Claim is attached hereto as **Exhibit 3.**

31.   Defendant failed to respond in any way to Plaintiff's Notice of Claim by July 20, 2018.  As a result, Plaintiff's counsel informally reached out via telephone to Defendant's known contact phone numbers to demand a copy of the bill of lading and tariff in order to ascertain if any additional conditions precedent existed before the instant suit could be filed.

32.   Between July 20, 2018 and September 10, 2018, Plaintiff's counsel spoke to, and exchanged emails with several agents of Defendant, including the claims department and legal department, attempting to obtain a copy of Defendant's tariff, the bill of lading, or shipper's receipt.  As of the date of this Complaint, Defendant refuses to provide these items.

33.   As of the date of this Complaint, Defendant has failed to deliver Plaintiff's property to her address in California, or to give Plaintiff a refund and allow her to retake possession of her property.

34.     Plaintiff has hired the law firm of Bogin, Munns & Munns, P.A. to represent her interests in conjunction with this action and is obligated to pay them a reasonable sum in connection with their services.

35.     All conditions precedent to the filing of this action have occurred, were performed, or have been waived.

**COUNT I – DAMAGES UNDER THE CARMACK AMENDMENT**

36.     Plaintiff realleges and reincorporates by reference the allegations of paragraphs 1 through 35 above as if fully stated herein.

37.     This is an action against Defendant for damages arising under the Carmack Amendment to the ICC Termination Act, previously known as the United States Interstate Commerce Act, 49 U.S.C. § 14706.

38.     Defendant never left a Bill of Lading (if it ever existed) with the Plaintiff and also did not provide Plaintiff with any type of shipper's receipt (if one existed).

39.     All of Plaintiff's belongings were in good condition when they were picked up and loaded onto a truck by agents of the Defendant.

40.     After the Defendant's agent(s) departed with nearly all of her personal belongings, Defendant failed to ever deliver the same to her at her new address in California.

41.    As a result of the failure to deliver Plaintiff's property, Plaintiff suffered extensive monetary damages.

42.    Defendant did not effectively limit its liability under 49 U.S.C. § 14706(c)(1)(a) because it did not obtain Plaintiff's agreement to limit liability and did not give Plaintiff a reasonable opportunity to choose between differing levels of liability.

43.    Additionally, Plaintiff after seeing representations on Defendant's website, and after coming to an oral agreement with Defendant's duly authorized agent(s), reasonably believed the Defendant would be providing special treatment and care of her Property separate and apart from just the basic transportation, i.e., the guarantee that it would be delivered within two (2) weeks.

44.    Plaintiff also believed she was paying a higher charge to ensure this special treatment was provided to her and her property during the transport of her property from Florida to California.

45.    This special treatment was a separate, risk-related promise, special to the particular shipment at issue.

46.    The Defendant failed to provide this separate promise or service to this particular shipment at any time during the pickup or transport (or lack thereof) of Plaintiff's property.

47.     The loss (or delay of the delivery) of Plaintiff's property was a direct result of Defendant's failure to perform reasonable shipping methods and failure to perform the aforementioned specialized service.

48.     The Defendant is liable to Plaintiff for all damages and loss sustained to Plaintiff as a result of the transportation (or lack thereof) of the Plaintiff's property from Florida to California.

49.     Through its agents, Defendant either knew or should have known that in the event Plaintiff's property was delayed, damaged or lost, Plaintiff would incur special damages for the inability to utilize her personal property.

50.     Plaintiff has retained the services of Bogin, Munns & Munns, P.A., to represent her in this matter, and she is obligated to pay them a reasonable fee in connection therewith.

WHEREFORE Plaintiff, DIANE LANG, demands judgment against Defendant, DM MOVER, INC. d/b/a TRANS UNITED VAN LINES, for all damages for which it is liable under the Carmack Amendment, including without limitation:  1) delay damages; 2) replacement costs, shipping, and taxes associated with obtaining replacement personal effects and property; 3) lost profits and other special damages; 4) the freight charges billed by Defendant (and paid by Plaintiff); 5) prejudgment interest; 6) court costs and attorneys fees; and 7) for such other and further relief as this Honorable Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED on this the 11th day of September, 2018.

**BOGIN, MUNNS & MUNNS, P.A.**

*/s/ Eric Dibert*

Eric A. Dibert, Esq.
Florida Bar No.: 0091399
2700 NW 43rd Street, Ste. C
Gainesville, Florida 32606
Phone: 352-332-7688
Fax:     352-332-7692
Email: edibert@boginmunns.com
Email: manderson@boginmunns.com
Email: bmmservice@boginmunns.com
*Attorney for the Plaintiff, Diane Lang*

| | |
|---|---|
| **From:** | Diane Lang |
| **To:** | Eric Dibert |
| **Subject:** | Fwd: Your Moving Estimate #5113698 |
| **Date:** | Monday, June 25, 2018 2:10:11 AM |

ORIGINAL CONTRACT

Sent from my iPad

Begin forwarded message:

> **From:** dianemx63 <dianemx63@gmail.com>
> **Date:** June 21, 2018 at 9:27:08 AM PDT
> **To:** dianemx63@gmail.com
> **Subject: Fwd: Your Moving Estimate #5113698**

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Aaron - Trans United Van Lines <aaron@transunitedmovers.com>
Date: 2/24/18 11:19 AM (GMT-08:00)
To: dianemx63@gmail.com
Subject: Your Moving Estimate #5113698

| **Binding Moving Estimate** | | Job No: **U5113698** |
|---|---|---|
| **Trans United Van Lines** | **Customer Rep:** | Aaron |
| **9871 San Fernando Rd** | **Phone:** | 833-800-4977 Sales  Ext. 1005 |
| **Pacoima CA 91331** | **Fax:** | 2142919776 |
| **US DOT: 2957263   MC: MC-2614** | **Email:** | aaron@transunitedmovers.com |
| | **Web:** | http://transunitedvanlines.com/ |

| **Moving From** | **Moving To** |
|---|---|
| **Diane Lang** | **Diane Lang** |
| 1505 Fort Clarke Blvd | 5634 Lilyview Way |
| , Apt. #: 9201 | Elk Grove, CA 95757 |
| Gainesville, FL 32606 | Phone: 352-672-1463 |
| Phone: 352-672-1463 | |
| Phone: dianemx63@gmail.com | |
| dianemx63@gmail.com | |

| **Relocation Details** | | **Relocation Estimate** | |
|---|---|---|---|
| **Job No:** | **U5113698** | Basic Estimate Price | **$1525.00** |
| **Estimate Date:** | **02/24/2018** | one free wardrobe box | **$0.01** |
| **Representative:** | **Aaron** | Packing Materials | **$16.50** |
| | | | **- $0.01** |

Exhibit 1

| Move Type: Residential | Long Distance, 2769 miles | | |
|---|---|---|---|
| | | **Basic Valuation Protection:** | |
| **Estimated Volume:** | 305 cf. (2135 lbs) | $0.60 per lbs. per article | $0.00 |
| | $5.00 per cf | **Total Moving Estimate** | $1541.50 |
| **Move Day:** | **Wednesday/Thursday** | | |
| **Move Date:** | **03/14/2018-** **03/15/2018** | | |
| **Created on:** | 01/21/2018 | | |

| Full Value Protection Amount of Liability: $12,810.00 (Optional) | | | | | | |
|---|---|---|---|---|---|---|
| **Deductible Levels:** | $0 | $250 | $500 | $750 | $1000 | $1500 |
| **Valuation Charge:** | $525.21 | $422.73 | $371.49 | $294.63 | $243.39 | $217.77 |
| **Total Estimate Plus Valuation Charge:** | $2066.71 | $1964.23 | $1912.99 | $1836.13 | $1784.89 | $1759.27 |
| **Customer's Initials:** | x_____ | x_____ | x_____ | x_____ | x_____ | x_____ |

**WARNING:** If a moving company loses or damages your goods, there are 2 different standards for the company's liability based on the types of rates you pay. **BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS** in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for **FAR LESS** than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move. Before selecting a liability level, please read "Your Rights and Responsibilities When You Move", and Ready to Move Brochure provided by the moving company, and seek further information at the government website www.protectyourmove.gov

## Understanding Your Estimate

THIS IS A BINDING NOT TO EXCEED PRICE BASED ON THE INFORMATION PROVIDED BY YOU THE CLIENT. IF YOU HAVE ADDITIONAL ITEMS OR SERVICES NEEDED NOT INCLUDED IN THE ESTIMATE THEN YOU MAY HAVE ADDITIONAL CHARGES. IN SUCH A CASE THE CUSTOMER SHALL RECEIVE A REVISED ESTIMATE PRIOR TO LOADING AND WILL PAY FOR THE ADDITIONAL AT THE SAME RATE PER LB OR CUBIC FOOT QUOTED AT THE TIME OF BOOKING. IF YOUR WEIGHT OR CUBIC FOOT IS LESS THAN ESTIMATED YOU WILL RECEIVE A CREDIT FOR THE DIFFERENCE.

The following services and rates are included:

- FREE WRAPPING OF ALL FURNITURE INCLUDED
- Stairs (1 flight) If you have any additional flights of stairs they will be charged at $70 per flight and that fee goes directly to the crew working for you.( We consider a flight 10 steps) No charge for stairs within a house only walk up apartments.
- Tax, Mileage, Tolls and Fuel
- Loading & Unloading
- Door to Door Service
- 1 Free Month of Storage Upon Request
- Disassembly & Reassembly of Furniture
- Basic coverage (valuation of $0.60 x lb up to $50,000.00 x per article)
- Free Use Of blankets & Padding, Belts, Ties, and Straps for added protection of your furniture.

Long Carry: A long carry means that your belongings must be carried a distance of more than 100 feet at which point thereafter there you are charged at $1 per foot after the initial 100 feet. This money goes toward the men for the extra labor and manpower needed.

Shuttle service: A shuttle is required at destination points that cannot accept A 18-wheeler semi-trailer truck. Most situations don't require a shuttle, however if it is required, it will be charged at .50 cents per cubic foot to transfer your items, with a minimum of $400.00.
* Please note that packing materials will be charged solely based on what will be used for your move.

* Storage: One month free storage in our secured warehouse facility is included and available per customers' request.

Please note: customers that requested storage will need to notify the office 7 days before storage expires or next month's storage fee will apply.

Exhibit 1

DELIVERY TIME FRAME:
The following are the delivery timeframes for the designated areas:
East Coast delivery up to 14 Calendar days
Midwest up to 14 Calendar days
West Coast up to 21 Calendar Days
Certain factors that can affect delivery timeframe are weather and the size of your shipment. Large loads that are ready for delivery typically receive their goods quicker.
Please note there is no penalty to change or postpone your move date up to 48 hours before you are scheduled. All deposits are nonrefundable.Unless approved by a manager

### Articles List 15 Items, 41 Pieces

| Qty | Items | Qty | Items | Qty | Items |
|---|---|---|---|---|---|
| 1 | 1 SEAT SOFA | 1 | CHASIE LOUNGE | 3 | NIGHT STAND |
| 1 | ARMOIRE MED | 1 | DRESSER - SINGLE | 1 | PICTURE |
| 1 | BED - QUEEN (MATTRESS & BOX SPRING) | 2 | END TABLE | 2 | T.V 40``-50`` |
| 20 | BOX MEDIUM 3.0 CUBIC FT | 1 | LAMP, FLOOR | 2 | WALL CLOCK |
| 2 | BOX WARDROBE-10 CF | 1 | MIRROR | 2 | WALL DECOR PIECE |

**Click on Online Electronic Signature to confirm your move online.**

If you no longer wish to receive emails from Trans United Van Lines, please click on unsubscribe

Exhibit 1

# HOUSEHOLD GOODS
## DESCRIPTIVE INVENTORY
### Warehouse Receipt & Storage Contract

| | |
|---|---|
| PAGE NO | OF | PAGES |
| CARRIER'S REFERENCE NUMBER | |
| CONTRACT OR BILL OF LADING NUMBER | |
| GOVERNMENT SERVICE ORDER NUMBER | |
| VAN NUMBER | U511369 8 |

Shipper/Dipositor **Diane Lang**     Phone (C) **672-1463**   Phone (W)

352-

Mailing Address **5634 Lilyview Way**

City **Elk Grove**     State **CA**     Zip **95757**

**LOCATION SYMBOLS**

| | | |
|---|---|---|
| CP -CARRIER PACKED | BE -BENT | CU -CONTENTS & CONDITION | G -GOUGED | MO -MOTH EATEN | SH -SHORT | 1-ARM | 6-LEGS | 11-VENEER |
| PBO -PACKED BY OWNER | BR -BROKEN | UNKNOWN | L- LOOSE | R -RUBBED | SO -SOILED | 2-BOTTOM | 7-REAR | 12-EDGE |
| DBO -DISASSEMBLED BY OWNER | BU -BURNED | D -DENTED | MI -MILDEW | RU -RUSTED | T -TORN | 3-CORNER | 8-RIGHT | 13-CENTER |
| MCU -MECHANICAL CONDITION | CH -CHIPPED | F -FADED | M -MARRED | SC -SCRATCHED | W -MARLY WORN | 4-FRONT | 9-SIDE | 14-INSIDE |
| UNKNOWN | | | | | Z -CRACKED | 5-LEFT | 10-TOP | 15-ALL OVER |

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR

| ITEM NO | IN STORG | TO CARRIER | IN DEST | ARTICLES | ITEM NO | IN STORG | TO CARRIER | IN DEST | ARTICLES | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 1 | | | | | 1 | PBO | | | Box | 221- Head board |
| 2 | | | | | 2 | PBO | | | Box | 222- Suitcase |
| 3 | | | | | 3 | B | | | Night stand | 223- box |
| 4 | | | | | 4 | B | | | Night stand | 224- Mirror top |
| 5 | | | | | 5 | B | | | Mirror | 225- sign |
| 6 | | | | | 6 | BBBB | | | Armature | 226- Bed stands |
| 7 | | | | | 7 | PBO | | | Box | 227- Bed stands |
| 8 | | | | | 8 | | | | Pic | 228 Box |
| 9 | | | | | 9 | | | | Box | 229 Mat |
| 15 0 | | | | | 19 0 | BB | | | Chair | |
| 1 | | | | | 1 | BBBB | | | Sofa 3 seat | |
| 2 | | | | | 2 | | | | Bin | |
| 3 | | | | | 3 | | | | Bin | |
| 4 | | | | | 4 | | | | T.V | |
| 5 | | | | | 5 | | | | Bed Boards | |
| 6 | | | | | 6 | | | | Pic | |
| 7 | | | | | 7 | | | | Box | |
| 8 | | | | | 8 | | | | Wardrobe | |
| 9 | | | | | 9 | | | | Wardrobe | |
| 16 0 | | | | | 20 0 | | | | Wardrobe | |
| 1 | | | | | 1 | | | | Wardrobe | |
| 2 | | | | | 2 | B | | | Night stand | |
| 3 | | | | | 3 | | | | box spring | |
| 4 | | | | | 4 | | | | Mattress | |
| 5 | | | | | 5 | | | | Mirror | |
| 6 | | | | | 6 | | | | box | |
| 7 | | | | | 7 | | | | Clock | |
| 8 | | | | | 8 | BB | | | Dresser | |
| 9 | | | | | 9 | | | | Pic | |
| 17 0 | | | | | 21 0 | | | | Lamp | |
| 1 | | | | | 1 | | | | Bin | |
| 2 | | | | | 2 | | | | Bin | |
| 3 | | | | | 3 | | | | Chest | |
| 4 | | | | | 4 | | | | Bench | |
| 5 | | | | | 5 | | | | Side table | |
| 6 | | | | | 6 | | | | Sticks | |
| 7 | | | | | 7 | B | | | Side rails | |
| 8 | | | | | 8 | BBB | | | Head Board | |
| 9 | | | | | 9 | | | | Box | |
| 18 0 | | | | | 22 0 | | | | Box | |

| ITEM NO | Exceptions/Remarks: |
|---|---|
| | |

WE HAVE CHECKED ALL OF THE ITEMS LISTED, NUMBERED FROM 1 TO _____ INCLUSIVE AND ACKNOWLEDGE THAT THIS IS TRUE AND A COMPLETE LIST OF THE GOODS TENDERED AND OF THE STATE OF THE GOODS RECEIVED. WARNING→BEFORE SIGNING - CHECK SHIPMENT, COUNT ITEMS AND DESCRIBE LOSS OR DAMAGE IN THE SPACE ABOVE.

| TAPE LOT NO. | TAPE COLOR | START NO. | END NO. |
|---|---|---|---|
| 522327 | red | 141 | 230 |

| AT POINT OF ORIGIN | Contractor, Carrier, Authorized Agent (Driver)     Date | AT DESTIN-ATION | Contractor, Carrier, Authorized Agent (Driver)     Date |
|---|---|---|---|
| | Signature | | Signature |
| | Owner or Authorized Agent     Date | | Owner or Authorized Agent     Date |
| | Signature _Diane Lang_   3/15/18 | | Signature |

Form # HGDI-40 - C Copyright 2014 jiffi print, a Media Systems, Inc. Company - 866-427-4411 - orders@jiffiprint.com - www.jiffiprint.com

Exhibit 2

# Bogin, Munns & Munns, P.A.

Attorneys at Law ■ Since 1979

Eric A. Dibert
Attorney at Law
2700 NW 43rd St., Suite C
Gainesville, FL  32606
Ph: (352) 332-7688
Fax: (352) 332-7692
edibert@boginmunns.com

July 5, 2018

**SENT VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
DM MOVER, INC. d/b/a
TRANS UNITED VAN LINES
3150 W. Pembroke Rd. Bay 565-665
Hallandale, FL 33009

c/o Daniel Melendez, Registered Agent
170 N.E. 148 St.
North Miami, FL 33161

       **RE:**    **FORMAL NOTICE OF CLAIM**
               **DEMAND FOR RETURN OF PROPERTY**

TO WHOM IT MAY CONCERN:

Please be advised that this law firm has been retained by Ms. Diane Lang ("Client") to assist her with the recovery of her personal property, or in the alternative, to pursue damages caused by loss of the same. The purpose of this letter is to formally demand return of Client's property, to place you on notice of a potential claim against you for damages, and to formally demand payment of the same in lieu of resorting to litigation.

As you should be aware, back in February of 2018, my Client originally sought out your company's ("TUVL") services to assist her with moving from Gainesville, Florida to Elk Grove, California. After some preliminary discussions and negotiations with an agent of TUVL by the name of "Aaron," my Client agreed to pay TUVL no more than $1,541.50 (exclusive of any additional costs for insurance/liability protection under the bill of lading), in exchange for TUVL transporting her personal belongings from Gainesville to Elk Grove, pursuant to the "Binding Moving Estimate" sent to her by email on February 24, 2018, a true, correct and authentic copy of which is attached hereto as **Exhibit 1**. Of particular importance, the "Binding Moving Estimate" states that the amount of $1,541.50 was a "BINDING NOT TO EXCEED PRICE" based upon information provided by the Client, and that delivery would take place on the "West Coast up to 21 Calendar Days." Also on February 24, 2018, my Client sent TUVL a deposit in the amount of $462.35 (Check #1033).

On March 15, 2018, my Client's personal belongings were packed up and loaded by an agent of TUVL, at which time she was provided a document entitled "Household Goods Descriptive Inventory Warehouse Receipt & Storage Contract" which contained the service order number U5113698 (hereafter "Warehouse Receipt"), a true, correct, and authentic copy of which is attached hereto as **Exhibit 2**. The Warehouse Receipt accurately reflects not only all of the personal property received by TUVL, but also the fact that all items were in good condition, as there were no exceptions/remarks indicating any of the property had been damaged or was otherwise not in good condition. The total value of the personal property picked up by TUVL is approximately **$46,580.00**. See the attached inventory/value calculation attached hereto as **Exhibit 3**.

www.BoginMunns.com

Orlando ■ Clermont ■ Cocoa ■ Daytona ■ Deltona ■ Destin ■ Gainesville ■ Kissimmee ■ Leesburg ■ Melbourne ■ Ocala ■ Titusville ■ The Villages

Exhibit 3

EAD Ltr to TUVL
July 5, 2018
Page 2

Once all of my Client's property was loaded onto the truck driven by the TUVL agent, the agent represented to my Client that the cost of shipment had increased from $1,541.50 to over $7,000.00!  The TUVL agent verbally advised my Client that there were a few reasons for the price increase:  1) the items took up more space than TUVL originally estimated; 2) there was an additional amount necessary to "guarantee" delivery within two weeks; and 3) the remainder was to increase the carrier's liability from $0.60/lb up to its full replacement value.  My Client was also advised by the TUVL agent's "manager" Jason Mariano over the telephone that if she paid $3,000.00 in cash at that time, that they would give her an additional $1,000.00 discount.  My Client proceeded to pay the TUVL agent $3,000.00 in cash before he departed with her belongings.

On March 19, 2018, my Client spoke with Jason Mariano again via telephone.  During that conversation Mr. Mariano represented to her that TUVL could no longer guarantee a delivery date within two weeks, unless she paid half (1/2) of the remaining balance ($3,027.25).  The rationale given by Mr. Mariano was that because the balance was due at delivery, and because TUVL's (or its agents') drivers could not carry that much in cash, he could not "put the delivery into action" until my Client made yet another payment.  Believing she had no other choice, my Client made another payment to TUVL in the amount of $1,652.25 (Check #1036).

Between March 20, 2018 and May 9, 2018, there was no delivery or status update on a potential delivery from TUVL or its agents.  Finally, on May 10, 2018, a TUVL agent by the name of "Gonzalo" called my Client to let her know that he would be the driver taking her items to California.  Gonzalo gave my Client his cell phone number, and reported the new estimated delivery date as taking place between May 20th and May 23rd.  On May 24th, Gonzalo advised my Client that he did not have her belongings on his truck, and that he was on his way to California with a different load.  Further correspondence with Gonzalo revealed that he attempted to retrieve my Client's belongings from a storage facility prior to heading off to California; however, the storage facility refused to release those items to him.  On May 26th, Gonzalo again contacted my Client and informed her that he had been told TUVL would be shipping her things later that week.  Subsequently, on May 31st, the story changed yet again and TUVL's agent by the name of "Michael" advised my Client that her things were currently in a storage facility located in Ocala, Florida, where they had been since they were originally picked up back on March 15th, and that they would be on the road within two days.

The next day, on June 1, 2018, my Client received information from "Michael" that the actual truck (or trailer) itself containing her belongings was in fact in the Public Storage facility in Ocala, Florida, and that apparently, the driver who dropped it off no longer worked for TUVL.  Because of this, TUVL reported encountering difficulties obtaining the trailer without the former employee/agent's signature; however, my Client was told that management was supposedly working on fixing the issue.  Over the next two weeks, several calls were placed to TUVL and its various agents to inquire about a further status update, but none could be provided.  As of the date of this demand letter, my Client is unsure of the whereabouts of her property, or if they will ever be delivered to her by TUVL or its agents.

My Client's top priority is simply that your company complete delivery of her belongings to her California address **no later than ten (10) days from the date of this letter.**  In the event your company does not or cannot deliver her belongings to her in California within ten (10) days from the date of this letter, this letter shall serve as her formal demand upon you to reimburse her for damages in the amount of **$52,964.60**, which is broken down as follows:  1) $46,580.00 to replace her belongings; 2) $5,114.60 to reimburse her for all payments made to TUVL; and 3) $1,000.00 for her attorney's fees.

www.BoginMunns.com

Orlando ■ Clermont ■ Cocoa ■ Daytona ■ Deltona ■ Destin ■ Gainesville ■ Kissimmee ■ Leesburg ■ Melbourne ■ Ocala ■ Titusville ■ The Villages

EAD Ltr to TUVL
July 5, 2018
Page 3

If either her property or the payment mentioned above is not received by my Client within ten (10) days from the date of this letter, she has authorized me to pursue any and all legal or equitable actions against you in relation to the same, including but not limited to the initiation of litigation.

This letter shall also serve as a formal demand for the original Bill of Lading, as well as any copies of the same, and a copy of any applicable tariffs claimed by TUVL to be applicable to this shipment at the time of the both the contract for carriage and the date of this demand.

Should you or your attorney have any questions or would like to discuss further, do not hesitate to contact me at 352-332-7688 or by email at edibert@boginmunns.com.

I look forward to hearing from you.

Sincerely,

Eric A. Dibert

www.BoginMunns.com

Orlando ■ Clermont ■ Cocoa ■ Daytona ■ Deltona ■ Destin ■ Gainesville ■ Kissimmee ■ Leesburg ■ Melbourne ■ Ocala ■ Titusville ■ The Villages ⚙

Exhibit 3

# EXHIBIT 1

Exhibit 3

**Eric Dibert**

| | |
|---|---|
| **From:** | Diane Lang <dianemx63@gmail.com> |
| **Sent:** | Monday, June 25, 2018 2:10 AM |
| **To:** | Eric Dibert |
| **Subject:** | Fwd: Your Moving Estimate #5113698 |

ORIGINAL CONTRACT

Sent from my iPad

Begin forwarded message:

> **From:** dianemx63 <dianemx63@gmail.com>
> **Date:** June 21, 2018 at 9:27:08 AM PDT
> **To:** dianemx63@gmail.com
> **Subject: Fwd: Your Moving Estimate #5113698**

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Aaron - Trans United Van Lines <aaron@transunitedmovers.com>
Date: 2/24/18 11:19 AM (GMT-08:00)
To: dianemx63@gmail.com
Subject: Your Moving Estimate #5113698



| Binding Moving Estimate | | Job No: U5113698 | |
|---|---|---|---|
| **Trans United Van Lines** | **Customer Rep:** | Aaron | |
| **9871 San Fernando Rd** | **Phone:** | 833-800-4977 Sales Ext. 1005 | |
| **Pacoima CA 91331** | **Fax:** | 2142919776 | |
| **US DOT: 2957263 MC: MC-2614** | **Email:** | aaron@transunitedmovers.com | |
| | **Web:** | http://transunitedvanlines.com/ | |

| Moving From | Moving To |
|---|---|
| **Diane Lang** | **Diane Lang** |
| 1505 Fort Clarke Blvd | 5634 Lilyview Way |

Exhibit 3

| , Apt. #: 9201<br>Gainesville, FL 32606<br>Phone: 352-672-1463<br>Phone: dianemx63@gmail.com<br>dianemx63@gmail.com | Elk Grove, CA 95757<br>Phone: 352-672-1463 |
|---|---|

| **Relocation Details** | | **Relocation Estimate** | |
|---|---|---|---|
| **Job No:** | U5113698 | **Basic Estimate Price** | $1525.00 |
| **Estimate Date:** | 02/24/2018 | one free wardrobe box | $0.01 |
| **Representative:** | Aaron | **Packing Materials** | $16.50 |
| **Move Type:** Residential | Long Distance, 2769 miles | | - $0.01 |
| **Estimated Volume:** | 305 cf. (2135 lbs) $5.00 per cf | **Basic Valuation Protection:** $0.60 per lbs. per article | $0.00 |
| | | **Total Moving Estimate** | $1541.50 |
| **Move Day:** | Wednesday/Thursday | | |
| **Move Date:** | 03/14/2018-03/15/2018 | | |
| **Created on:** | 01/21/2018 | | |

| **Full Value Protection Amount of Liability: $12,810.00** (Optional) | | | | | | |
|---|---|---|---|---|---|---|
| **Deductible Levels:** | $0 | $250 | $500 | $750 | $1000 | $1500 |
| **Valuation Charge:** | $525.21 | $422.73 | $371.49 | $294.63 | $243.39 | $217.77 |
| **Total Estimate Plus Valuation Charge:** | $2066.71 | $1964.23 | $1912.99 | $1836.13 | $1784.89 | $1759.27 |
| **Customer's Initials:** | x_____ | x_____ | x_____ | x_____ | x_____ | x_____ |

**WARNING:** If a moving company loses or damages your goods, there are 2 different standards for the company's liability based on the types of rates you pay. **BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS** in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for **FAR LESS** than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move. Before selecting a liability level, please read "Your Rights and Responsibilities When You Move", and Ready to Move Brochure provided by the moving company, and seek further information at the government website www.protectyourmove.gov

## Understanding Your Estimate

THIS IS A BINDING NOT TO EXCEED PRICE BASED ON THE INFORMATION PROVIDED BY YOU THE CLIENT. IF YOU HAVE ADDITIONAL ITEMS OR SERVICES NEEDED NOT INCLUDED IN THE ESTIMATE THEN YOU MAY HAVE ADDITIONAL CHARGES. IN SUCH A CASE THE CUSTOMER SHALL RECEIVE A REVISED ESTIMATE PRIOR TO LOADING AND WILL PAY FOR THE ADDITIONAL AT THE SAME RATE PER LB OR CUBIC FOOT QUOTED AT THE TIME OF BOOKING. IF YOUR WEIGHT OR CUBIC FOOT IS LESS THAN ESTIMATED YOU WILL RECEIVE A CREDIT FOR THE DIFFERENCE.

The following services and rates are included:

- FREE WRAPPING OF ALL FURNITURE INCLUDED
- Stairs (1 flight) If you have any additional flights of stairs they will be charged at $70 per flight and that fee goes directly to the crew working for you.( We consider a flight 10 steps) No charge for stairs within a house only walk up apartments.
- Tax, Mileage, Tolls and Fuel
- Loading & Unloading

Exhibit 3

- Door to Door Service
- 1 Free Month of Storage Upon Request
- Disassembly & Reassembly of Furniture
- Basic coverage (valuation of $0.60 x lb up to $50,000.00 x per article)
- Free Use Of blankets & Padding, Belts, Ties, and Straps for added protection of your furniture.

Long Carry: A long carry means that your belongings must be carried a distance of more than 100 feet at which point thereafter there you are charged at $1 per foot after the initial 100 feet. This money goes toward the men for the extra labor and manpower needed.

Shuttle service: A shuttle is required at destination points that cannot accept A 18-wheeler semi-trailer truck. Most situations don't require a shuttle, however if it is required, it will be charged at .50 cents per cubic foot to transfer your items, with a minimum of $400.00.
* Please note that packing materials will be charged solely based on what will be used for your move.

* Storage: One month free storage in our secured warehouse facility is included and available per customers' request.

Please note: customers that requested storage will need to notify the office 7 days before storage expires or next month's storage fee will apply.

DELIVERY TIME FRAME:
The following are the delivery timeframes for the designated areas:
East Coast delivery up to 14 Calendar days
Midwest up to 14 Calendar days
West Coast up to 21 Calendar Days
Certain factors that can affect delivery timeframe are weather and the size of your shipment. Large loads that are ready for delivery typically receive their goods quicker.
Please note there is no penalty to change or postpone your move date up to 48 hours before you are scheduled. All deposits are nonrefundable.Unless approved by a manager

## Articles List 15 Items, 41 Pieces

| Qty | Items | Qty | Items | Qty | Items |
|---|---|---|---|---|---|
| 1 | 1 SEAT SOFA | 1 | CHASIE LOUNGE | 3 | NIGHT STAND |
| 1 | ARMOIRE MED | 1 | DRESSER - SINGLE | 1 | PICTURE |
| 1 | BED - QUEEN (MATTRESS & BOX SPRING) | 2 | END TABLE | 2 | T.V 40``-50`` |
| 20 | BOX MEDIUM 3.0 CUBIC FT | 1 | LAMP, FLOOR | 2 | WALL CLOCK |
| 2 | BOX WARDROBE-10 CF | 1 | MIRROR | 2 | WALL DECOR PIECE |

**Click on Online Electronic Signature to confirm your move online.**

If you no longer wish to receive emails from Trans United Van Lines, please click on unsubscribe

Exhibit 3

# EXHIBIT 2

Exhibit 3

# HOUSEHOLD GOODS
## DESCRIPTIVE INVENTORY
### Warehouse Receipt & Storage Contract

CARRIER'S REFERENCE NUMBER

CONTRACT OR BILL OF LADING NUMBER

GOVERNMENT SERVICE ORDER NUMBER

VAN NUMBER: U5113698

Shipper/Dipositor: Diane Lang   Phone (C): 672-1463   Phone (W):   352-

Mailing Address: 5634 Lilyview Way

City: Elk Grove   State: CA   Zip: 95757

LOCATION SYMBOLS

CP -CARRIER PACKED
PBO -PACKED BY OWNER
DBO -DISASSEMBLED BY OWNER
MCU -MECHANICAL CONDITION UNKNOWN

BE -BENT
BR -BROKEN
BU -BURNED
CH -CHIPPED

CU -CONTENTS & CONDITION UNKNOWN
D -DENTED
F -FADED

G -GOUGED
L -LOOSE
M -MILDEW
M- MARRED

MO-MOTH EATEN
RU -RUSTED
SC -SCRATCHED

SH -SHORT
SO -SOILED
W - BADLY WORN
Z - CRACKED

1-ARM
2-BOTTOM
3-CORNER
4-FRONT
5-LEFT

6-LEGS
7-REAR
8-RIGHT
9-SIDE
10-TOP

11-VENEER
12-EDGE
13-CENTER
14-INSIDE
15-ALL OVER

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR

| ITEM NO | IN STORG | TO CARRIER | IN DEST | ARTICLES | ITEM NO | IN STORG | TO CARRIER | IN DEST | ARTICLES | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 1 | ✓ | | | | 1 | PBO | | | Box | 221 · Head board |
| 2 | ✓ | | | | 2 | PBO | | | box | 222 · Suitcase |
| 3 | ✓ | | | | 3 | B | | | Night stand | 223 · box |
| 4 | ✓ | | | | 4 | B | | | Night stand | 224 · Marbl top |
| 5 | ✓ | | | | 5 | B | | | Mirror | 225 · Sign |
| 6 | ✓ | | | | 6 | BBBB | | | Armoire | 226 · Bed boards |
| 7 | ✓ | | | | 7 | PBO | | | box | 227 · Bed boards |
| 8 | | | | X | 8 | | | | Pic | 226 Box |
| 9 | | | | | 9 | | | | Box | 227 Mat |
| 15 0 | | | | | 19 0 | BG | | | Chair | |
| 1 | | | | | 1 | BBBB | | | Sofa 3 seat | |
| 2 | | | | | 2 | | | | Bin | |
| 3 | | | | | 3 | | | | Bin | |
| 4 | | | | | 4 | | | | T.V | |
| 5 | | | | | 5 | | | | Bed Boards | |
| 6 | | | | | 6 | | | | Pic | |
| 7 | | | | | 7 | | | | Box | |
| 8 | ✓ | | | | 8 | | | | Wardrobe | |
| 9 | | | | | 9 | | | | Wardrobe | |
| 16 0 | | | | | 200 | | | | Wardrobe | |
| 1 | | | | | 1 | | | | Wardrobe | |
| 2 | ✓ | | | | 2 | B | | | Night stand | |
| 3 | | | | | 3 | | | | Dresser | |
| 4 | | | | X | 4 | | | | Mattress | |
| 5 | | | | | 5 | | | | Mirror | |
| 6 | | | | | 6 | | | | box | |
| 7 | | | | | 7 | | | | Clock | |
| 8 | | | | | 8 | BB | | | Dresser | |
| 9 | | | | | 9 | | | | Pic | |
| 17 0 | | | | | 210 | | | | Lamp | |
| 1 | | | | | 1 | | | | Bin | |
| 2 | | | | | 2 | | | | Bin | |
| 3 | | | | | 3 | | | | Closet | |
| 4 | ✓ | | | | 4 | | | | Bench | |
| 5 | | | | | 5 | | | | Side table | |
| 6 | ✓ | | | | 6 | | | | Sticks | |
| 7 | | | | X | 7 | B | | | Side rails | |
| 8 | | | | | 8 | BBB | | | Head Board | |
| 9 | | | | | 9 | | | | Box | |
| 18 0 | | | | | 220 | | | | Box | |

| ITEM NO | Exceptions/Remarks: |
|---|---|

WE HAVE CHECKED ALL OF THE ITEMS LISTED, NUMBERED FROM 1 TO _____ INCLUSIVE AND ACKNOWLEDGE THAT THIS IS TRUE AND COMPLETE LIST OF THE GOODS TENDERED AND/OF THIS STATE OF THE GOODS RECEIVED.
WARNING → BEFORE SIGNING - CHECK SHIPMENT, COUNT ITEMS AND DESCRIBE LOSS OR DAMAGE IN THE SPACE ABOVE

TAPE LOT NO.: 522327   TAPE COLOR: red   START NO.: 141   END NO.: 230

| | Contractor, Carrier, Authorized Agent (Driver)   Date | | Contractor, Carrier, Authorized Agent (Driver)   Date |
|---|---|---|---|
| AT POINT OF ORIGIN | Signature | AT DESTIN- ATION | Signature |
| | Owner or Authorized Agent   Date | | Owner or Authorized Agent   Date |
| | Signature   3/15/18 | | Signature |

Form # HGDI-40 - C Copyright 2014 Jiffi print, a Media Systems, Inc. Company  866-427-4411 . orders@jiffiprint.com . www.jiffiprint.com

Exhibit 3

# EXHIBIT 3

Exhibit 3

HOUSEHOLD/ITEMS ON TRUCK

| | |
|---|---|
| 2 lrg black wicker night stands | 500 |
| Black wicker wall mirror | 150 |
| Lrg brown wall clock | 80 |
| 2  8' iron wall sconces | 300 |
| Black iron and glass candle holder | 80 |
| Red ceramic vase | 85 |
| 2 rubbermaid containers of sentimental books | 400 |
| Red vintage table clock | 50 |
| Silver/black iron fruit bowl | 60 |
| Queen comforter and duvet cover & pillow shams | 300 |
| Queen Comforter and pillow shams | 150 |
| 5 blankets/afagans | 250 |
| toiletries | 400 |
| Large decrative bathroon rug | 80 |
| Hall wall décor | 60 |
| Hall picture hanger | 65 |
| Queen poster bed | 3,000.00 |
| Lrg night stand | incl in abv |
| Double dresser with marble top | incl in abv |
| Large round mirror for dresser | incl in abv |
| Lrg black wall clock | 150 |
| Queen comfortr and duvet | 300 |
| Queen comforter & pillow shams | 250 |
| Kitchen wall sign | 60 |
| Cake platter  X2 | 80 |
| Vita Mix Mixer/blender | 700 |
| Red decorative pillow | 50 |
| Table lamp | |
| 3 oil rubbed candle holders | 50 |
| Little black table box | 40 |
| 2 black leather and zebra hat boxes | 150 |
| Containers of yearbooks | PRICELESS |
| Antique Singer sewing machine and bench | 500 |
| Iron bench w/zebra design cushion | 300 |
| 2 containers of gift wrap | 200 |
| 2 containers of family photos | PRICELESS |
| Lrg Creative memories roller supply carrier | 300 |
| 4 Victoria Secret over night bags | 400 |
| Bag of Bath & Body Works sprays & lotions | 200 |
| Container of family videos | PRICELESS |
| 70 pr of shoes & boots | 3,500.00 |
| Clothes | 7,500.00 |
| All Victoria Secret Lingerie | 3,000.00 |
| Wall hanging - bedrom | 50 |
| Coat hanger | 30 |
| Red Leather Thomasville couch w/4 red leather pillows | 5,000.00 |

Exhibit 3

| | |
|---|---|
| Red Leather Tufted Thomasville Chaise | 5,000.00 |
| Floor lamp | 400 |
| 3 decorative trunks | 150 |
| Red Wall clock | 150 |
| Zebra decorative vase & dish | 150 |
| Framed photos | 150 |
| 8 bed pillows | 240 |
| 1 temporpedic (cloud) pillow | 120 |
| Decorative 4 balled candle holder | 65 |
| 45" smart TV | 1,400.00 |
| Decorative wall hangimg | 80 |
| HP Printer/Fax/Scanner | 75 |
| Large Decorative Ceramic Rooster | 75 |
| Glass & Iron Ice tea dispencer | 50 |
| BroyHill Attic Hairlooms Armoir | 1,500.00 |
| 2 tall black wooden candle holders | 50 |
| Red ceramic vase and red tea pot to match | 90 |
| Red lrg ceramic vase | 65 |
| 4  11x14 black picture frames | 80 |
| Iron wall wine holder | 200 |
| Dec counter lemon tree | 40 |
| Cutco knives in wooden block | 2,000.00 |
| Family Recipies | PRICELESS |
| Kitchen utencils | 200 |
| Cuisenart coffee grinder | 50 |
| Cuisenart food processor | 300 |
| Red kitchenaide stand alone mixer | 350 |
| Pots & pans | 300 |
| Mikassa dishes - svc for 12 | 500 |
| Mikassa serving pieces | 450 |
| Glassware | 200 |
| Wooden bowl & tier server | 100 |
| serving dishes | 100 |
| Princess House serving pieces | 250 |
| Waffle maker | 40 |
| 4 piece wood & glass canister set | 60 |
| Glass cookie jar | 40 |
| 7 X-tra lrg rubbermaid containers w/seasonal holiday items | 2,000.00 |
| Baking pans | 200 |
| Electric pressure cooker | 150 |
| Gallon ea... shampoo & conditioner | 80 |
| door mat | 40 |
| Iron | 70 |
| Table Top Grill | 150 |

Exhibit 3